UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TERRI LYNN BROWN,

    Plaintiff and
    Counter-Defendant,

-vs-                                        Case No.  5:08-cv-118-Oc-10GRJ

UNITED STATES OF AMERICA,

    Defendant and
    Counter-Plaintiff.
_____/

**O R D E R**

Plaintiff Terri Lynn Brown, proceeding *pro se*, seeks a refund of federal trust fund recovery penalties paid to the Internal Revenue Service ("IRS") for the tax period ending June 30, 2000 (Doc. 26).  The United States of America filed a counterclaim seeking to reduce to judgment assessments for unpaid federal trust fund recovery penalties for the tax periods ending June 30, 1999 through June 30, 2000, December 31, 2000, and March 31, 2001 (Docs. 3, 15).

The case is now before the Court on the United States' motion for summary judgment (Doc. 13).  Ms. Brown has filed a response and supplemental response in opposition (Docs. 17, 28), and the United States has filed a reply (Doc. 30).  Upon due consideration, the Court finds that the motion for summary judgment is due to be granted in its entirety.

**Undisputed Material Facts**

Safe-Deposit, Inc. ("Safe-Deposit") was an Ocala, Florida business incorporated in 1994 by Ms. Brown's husband. The company initially operated as an armored car service. In 1995, Ms. Brown took over the operations of Safe-Deposit and converted it into a security guard company which provided security services to local businesses. At that time, Ms. Brown became the sole shareholder, president, and only director of Safe-Deposit. She controlled all of the finances and made all financial decisions for the company.

Ms. Brown opened a bank account for Safe-Deposit at AmSouth Bank and was the only authorized signatory on that account during the tax periods at issue. She prepared and signed all checks on behalf of the company and decided which creditors to pay. Ms. Brown was in charge of hiring and firing employees, keeping the books and records, advertising for prospective clients, collecting on past due accounts, managing the finances, and making all corporate decisions.

Ms. Brown was also responsible for collecting and paying employment taxes with respect to the employees of Safe-Deposit, and she prepared, signed, and submitted to the IRS the Quarterly Federal Tax Returns, Forms 941, for the company. Ms. Brown also maintained all of the company's financial books and records. She would enter all employee time sheets into a bookkeeping computer program, print out quarterly reports, and pay the stated payroll tax liability if funds were available.

Safe-Deposit first operated out of Ms. Brown's home, but she eventually moved the company to a separate office building in Ocala, Florida in 1997. At its peak, the company employed over thirty security guards. However, between September 1996 and April 2001, Ms. Brown went through two difficult pregnancies, and her children and grandmother suffered from numerous serious health issues. Safe-Deposit's clients were also frequently delinquent on their accounts, leaving the company with limited cash flow. Ms. Brown also claims that the Ocala Police Department wrongfully interfered with her business by initiating an unfounded investigation into Safe-Deposit's operations. Ms. Brown claims that these events caused financial difficulties for Safe-Deposit, and Ms. Brown ultimately made the decision to dissolve the company in April 2001.

Safe-Deposit failed to pay over to the IRS federal trust fund taxes – *i.e.* payroll and FICA taxes withheld from the wages of Safe-Deposit's employees – for the tax periods ending June 30, 1999 through June 30, 2000, December 31, 2000, and March 31, 2001. During these tax periods, Ms. Brown admits that she did not pay the company's trust fund taxes. She instead used Safe-Deposit's funds to pay its employees first, and to pay other creditors and necessary operating costs.

After Safe-Deposit failed to pay the trust fund taxes, the IRS made assessments against Ms. Brown as the person responsible for those payments pursuant to 26 U.S.C. § 6672. On April 16, 2001, the IRS assessed against Ms. Brown a trust fund recovery penalty of $30,924.16 for the tax period ending June 30, 1999 through June 30, 2000.

This amount represented the trust fund portion of the unpaid federal payroll taxes of Safe-Deposit for that tax period. On April 21, 2003, Ms. Brown was assessed two trust fund recovery penalties in the amount of $6,322.79 and $6,889.61 for the tax periods ending December 31, 2000 and March 31, 2001, respectively. The IRS mailed notices of assessments and demands for payment to Ms. Brown, who admits that she received such notices.

After receiving the notices of assessment and demands for payment, Ms. Brown made some payments towards satisfying her tax liabilities for the tax periods ending June 30, 1999 through June 30, 2000. Ms. Brown entered into an installment agreement with the IRS on July 20, 2005, and made semi-regular payments through November 2008 on her tax liability for the period ending June 30, 2000. She did not make all payments due under the installment agreement. Additionally, credits for overpayments of Ms. Brown's income tax for the tax years 2002, 2004, 2006, and 2007 were applied to reduce the unpaid balance of Ms. Brown's tax fund recovery penalty liability for the period ending June 30, 2000. In November 2006, Ms. Brown also made a payment of $100.00 on each of her tax penalties for the periods ending December 31, 2000 and March 31, 2001. She has otherwise failed to satisfy her tax penalties.

As of April 1, 2009, Ms. Brown's total tax liability due and owing for all relevant tax periods was $42,127.49 with interest continuing to accrue.

**Procedural History**

This case began as a *pro se* complaint against the United States of America, the Commissioner of the Internal Revenue Service, and various unknown employees of the IRS and other government agencies alleging violations of Ms. Brown's due process and equal protection rights, as well as various state law claims (Doc. 1).  The United States filed an answer and counterclaim seeking to reduce to judgment Ms. Brown's unpaid federal trust fund employment taxes for the tax periods ending June 30, 2000, December 31, 2000, and March 31, 2001 (Doc. 3).

The United States moved to dismiss all claims (Doc. 8), and to amend its counterclaim to clarify that the assessments against Ms. Brown also included the tax period ending June 30, 1999 through June 30, 2000 (Doc. 15).  The United States also moved for summary judgment on its counterclaim (Doc. 13).

The Court granted the United States' motion to amend its counterclaim, as well as the United States' motion to dismiss, and dismissed with prejudice all but one of Ms. Brown's claims (Doc. 25).  The Court dismissed without prejudice the remaining claim, and granted Ms. Brown leave to file an amended complaint to assert a claim for a tax refund under 26 U.S.C. § 1346(a)(1) for the tax period ending June 30, 2000.  (Id.).  The Court deferred ruling on the United States' motion for summary judgment, reopened discovery to allow Ms. Brown to take the deposition of IRS Revenue Agent

Richard Hanauer, and directed the parties to file supplemental briefing on the summary judgment motion following the conclusion of Agent Hanauer's deposition. (Id.).

Ms. Brown filed her amended complaint as instructed by the Court (Doc. 26). In her amended complaint, Ms. Brown alleges that she is entitled to a refund "for the tax penalties paid for the calendar year June 30, 2000." (Doc. 26, ¶ 5). However, Ms. Brown does not request an actual refund, but instead asks that "the tax liens [be] removed and the moneys paid to the Defendants be applied to the outstanding tax penalties for the remaining periods which should completely remove all the penalties." (Id., ¶ 8).

Both sides have also filed supplemental papers to be considered along with the United States' motion for summary judgment (Docs. 28, 30-31).[1] The motion for summary judgment is therefore now ripe for disposition. Ms. Brown has also requested leave to take additional discovery of other allegedly previously undisclosed revenue officers (Doc. 28).

---

[1] Although the United States' original motion for summary judgment only addressed its counterclaim, it is clear that a resolution in favor of the United States would also dispose of Ms. Brown's amended complaint. The amended complaint seeks a refund of the trust fund recovery penalties paid for the tax period ending June 30, 2000 – one of the same tax periods concerning which the United States is seeking a judgment in its amended counterclaim. Thus, by finding that the United States is entitled to a judgment for that tax period for the unpaid trust fund recovery penalties, the Court also necessarily must find that Ms. Brown is not entitled to a refund of those same penalties. This issue has been fully briefed by both sides, and therefore, the Court will consider the United States' motion for summary judgment to cover both the amended complaint and amended counterclaim.

## **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the entry of summary judgment is appropriate only when the Court is satisfied that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celotex, 477 U.S. at 324. See also Fed. R. Civ. P. 56(e)(2). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**Discussion**

**I.     The Tax Fund Penalty Assessments.**

Sections 26 U.S.C. §§ 3102(a) and 3402(a) of the Internal Revenue Code respectively require an employer to deduct from wages paid to its employees the employees' share of FICA (social security) taxes, and the withholding tax on wages applicable to individual income taxes.  The withheld sums are commonly referred to as "trust fund taxes," which are deemed to be held in a "special trust fund for the United States."  26 U.S.C. § 7501(a).  However, there is no requirement that these sums be segregated from the employer's other accounts, and the employer need only report and pay these taxes to the IRS quarterly.  See 26 C.F.R. §§ 31.6011(a)-4(a)(1); 1.6071(a)-1(a).  These trust fund taxes have been dubbed "a tempting source of ready cash to a failing corporation beleaguered by creditors."  Slodov v. United States, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783 (1978).

The withholding tax liability arises at the time the wages are paid, not on the actual due date of the quarterly tax return.  "Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment."  Slodov, 436 U.S. at 243, 98 S.Ct. at 1783; see also 26 C.F.R. § 31(a); 26 C.F.R. § 1.31-1(a).  An employer who fails to pay taxes withheld from its employees'

wages is liable for the taxes which should have been paid. Slodov, 436 U.S. at 243, 98 S.Ct. at 1783; 26 U.S.C. §§ 3102(b) and 3403.

The IRS may use the full range of collection methods available for the collection of taxes generally, including creating a lien against the property of the employer, and assessing penalties against a delinquent employer. In particular, § 6672 of the Internal Revenue Code provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

The Code defines "person" to include "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

In this case, the IRS assessed trust fund recovery penalties against Ms. Brown pursuant to § 6672(a). The Eleventh Circuit Court of Appeals has held that the test for liability under §6672(a) may be reduced to two elements: "(1) a responsible person; (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes." Thosteson v. United States, 331 F. 3d 1294, 1298 (11th Cir. 2003).

A person is responsible within the meaning of § 6672 if she has a duty to collect, account for, or pay over taxes withheld from the wages of a company's employees. Thibodeau v. United States, 828 F.2d 1499, 1503 (11th Cir. 1987). It is a matter of the power and authority to make payment of withholding taxes, and indicia of responsibility includes "the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." Thosteson, 331 F.3d at 1299 (quoting George v. United States, 819 F.2d 1008, 1011 (11th Cir. 1987)).

The United States has presented evidence establishing, as a matter of law, that Ms. Brown was the responsible person for collecting, accounting for, and paying the trust fund taxes for Safe-Deposit. Indeed, Ms. Brown does not dispute this fact. See Affidavit of Terri Lynn Brown, ¶ 15 (Doc. 19) ("I have at all times stated that I was the responsible person to make the tax payments timely."). The United States has also submitted Certificates of Assessment and Payments (Forms 4340) evidencing the tax assessments for each of the tax periods in question, and such documentation is sufficient to establish a *prima facie* case of liability. United States v. Chila, 871 F.2d 1015, 1017-18 (11th Cir. 1989); Mersel v. United States, 420 F.2d 517, 518 (5th Cir. 1969). See also Olster v. Commissioner of Internal Revenue Service, 751 F.2d 1168, 1174 (11th Cir. 1985) ("Absent a finding that the computational methods used, and therefore the assessment, was arbitrary and without foundation, the tax deficiency is presumptively correct.") (citations omitted).

While Ms. Brown has stated that she "believe[s] that payments have been applied incorrectly, tax liens were filed with errors, and time sensitive correspondences were mailed to the wrong address," (Doc. 19, ¶ 18), she has not submitted any evidence to support this contention.  Thus, the uncontradicted, admissible evidence before this Court establishes the amount of the assessments as listed in the Certificates of Assessments and Payments.  The only issue left to resolve is whether Ms. Brown's failure to pay the trust fund taxes was willful.

## II.     The Failure to Pay Was Willful

For purposes of assessing penalties under § 6672, "willfully" does not require proof of criminal intent; it simply means "a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." Brown v. United States, 591 F.2d 1136, 1140 (5th Cir. 1979).[2]  The responsible person acts willfully if she does not use her authority to make sure the funds are deposited and paid to the IRS rather than permitting the tax money to be paid to other creditors. Woodruff v. United States, No. 8:09-cv-1507-T-26TBM, 2010 WL 3419201 at * 3 (M.D. Fla. Aug. 27, 2010).  See also Smith v. United States, 894 F.2d 1549, 1553 (11th Cir. 1990) ("The willfulness requirement of section 6672 is satisfied  if there is evidence that the

---

[2]In Bonner v. City of Prichard, Ala., 661 F.2d 1207, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30,1981.

responsible officer had knowledge of payments to other creditors after he was aware of the failure to remit withholding taxes.").

The United States has presented undisputed evidence that Ms. Brown acted willfully for each of the tax periods at issue. Ms. Brown admits that she knew of Safe-Deposit's tax obligations to the IRS. She further admits that she knowingly and voluntarily chose to pay her employees, creditors, and necessary operating expenses rather than pay the IRS the trust fund taxes due and owing. Ms. Brown did this in an attempt to keep Safe-Deposit's doors open, despite her knowledge of the growing tax debt. The Court finds that Ms. Brown acted "willfully" in failing to fulfill her duties and pay the company's trust fund taxes over to the IRS. See Thibodeau, 828 F.2d at 1505 (citing Mazo v. United States, 591 F.2d 1151, 1157 (5th Cir. 1979)) (holding that evidence that the responsible person had knowledge of payments to creditors after he was aware of the failure to pay trust fund taxes is sufficient for summary judgment on issue of willfulness).

Ms. Brown argues that she had reasonable cause for her failure to pay Safe-Deposit's trust fund taxes, and asks the Court to find that she did not act willfully (or at least find a material question of fact on this point). The Eleventh Circuit has not precisely defined "reasonable cause," but the former Fifth Circuit has held that, "in order to further the basic purposes of section 6672, . . . reasonable cause should have a very limited application." Newsome v. United States, 431 F.2d 742, 747 (5th Cir. 1970). See also Bowen v. United States, 836 F.2d 965, 968 (5th Cir. 1988) ("Although

we have recognized conceptually that a reasonable cause may militate against a finding of willfulness, no taxpayer has yet carried that pail up the hill.").

Ms. Brown urges the Court to use the standard for reasonable cause applicable to the levy of penalties for the failure to timely pay income taxes or file an income tax return under 26 U.S.C. § 6651 – that the taxpayer exercised "ordinary business care and prudence in providing for payment of his tax and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid the tax on time." United States v. Sanford, 979 F.2d 1511, 1514 n. 8 (11th Cir. 1992); see also 26 C.F.R. §301.6651(c)(1). The Eleventh Circuit has not addressed this question, and the circuits are split on whether or not the "ordinary business care and prudence" standard should apply to § 6672 penalties. Cf. Fran Corp. v. United States, 164 F.3d 814, 818-19 (2d Cir. 1999) and Brewery, Inc. v. United States, 33 F.3d 589, 592 (6th Cir.1994) (both applying ordinary business care and prudence standard to reasonable cause analysis under § 6672) with Finley v. United States, 123 F.3d 1342, 1348 (10th Cir. 1997) (rejecting the more lenient reasonable cause standard of ordinary business care and prudence for penalties under § 6672, and finding reasonable cause only where "(1) the taxpayer has made reasonable efforts to protect the trust funds, but (2) those efforts have been frustrated by circumstances outside the taxpayer's control."), and Olsen v. United States, 952 F.2d 236, 241 (8th Cir. 1991) (holding that reasonable cause is no part of the definition of willfulness in Section 6672).

The Court need not resolve this question because, regardless of which standard is applied to the facts of this case, it is clear that Ms. Brown did not have reasonable cause sufficient to excuse her willful failure to file and pay Safe-Deposit's trust fund taxes.

Ms. Brown cites to a litany of events that occurred between September 10, 1996 and April 2001. Specifically, Ms. Brown points to her difficult pregnancies, the serious medical issues suffered by her children and her grandmother (who lived with Ms. Brown), the supposed interference by the Ocala Police Department in the operation of Safe-Deposit,[3] the supposed malpractice by the law firm she hired to file suit against the Ocala Police Department, the late payments by Safe-Deposit's clients, and the fact that she cannot remember the IRS ever advising her of the penalties for not paying the trust fund taxes as proof of the undue hardships she suffered which prevented her from paying the trust fund taxes. Ms. Brown also contends that she made some attempts to pay the trust fund taxes through her installment plan, firmly believed that Safe-Deposit's business would improve, and believed she would be able to eventually pay in full the trust fund taxes. (Doc. 19, ¶ 17; Doc. 17, p. 2).

---

[3]Ms. Brown appears to argue that the Ocala Police Department conducted an inappropriate and public investigation into Safe-Deposit's business in order to ensure that her husband (who at the time was an officer with the Ocala Police) was not breaching his duties to the department or operating under a conflict of interest. Ms. Brown further contends that because the Ocala Police Department permitted off-duty officers to provide similar security services – *i.e.* the Police Department was a direct competitor of Safe-Deposit – the Police Department harassed Safe-Deposit and interfered with the company's business in an attempt to steal Safe-Deposit's customers.

Ms. Brown claims that her circumstances over this nearly five (5) year period placed Safe-Deposit in dire financial straits, and that she was forced to use the limited corporate funds to pay employees and to keep the doors open. The United States does not dispute the occurrence of any of these events, but argues that they are not sufficient to constitute reasonable cause. And, while the Court is sympathetic to Ms. Brown's circumstances, the Court agrees with the United States.

> Taxes withheld from the wages of an employee are held by the employer in trust for the government. . . . These trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer, including salaries.... It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern- the government cannot be made an unwilling partner in a floundering business."

Brewery, 33 F.3d at 593 (quoting Collins v. United States, 848 F.2d 740, 741-42 (6th Cir.1988)).

Simply put, the Court cannot say that Ms. Brown acted with ordinary business care and prudence or made reasonable efforts to protect the trust funds when she deliberately and knowingly chose to pay other business expenses with those funds from June 1999 through April 2001. The fact that her business was having financial difficulties due to outside forces (the Ocala Police and delinquent customers) does not excuse Ms. Brown's conscious choices. See Greenberg v. United States, 46 F.3d 239, 244 (3d Cir. 1994) ("It is no defense that the corporation was in financial distress and

that funds were spent to keep the corporation in business with an expectation that sufficient revenue would later become available to pay the United States.").

The Court is also persuaded by the Eleventh Circuit's Thosteson decision. While the Court of Appeals refrained from addressing whether a reasonable cause defense applies in a § 6672 action, the Eleventh Circuit held that even if such a defense did exist, it would not apply where a responsible person knowingly used trust fund taxes to pay creditors other than the United States. See 331 F.3d at 1301 (quoting Logal v. United States, 195 F.3d 229, 233 (5th Cir. 1999)) ("No [reasonable cause] defense may be asserted by a responsible person who knew that the withholding taxes were due, but who made a conscious decision to use corporate funds to pay creditors other than the government."). Thus, even without express guidance from the Eleventh Circuit, it is clear that Ms. Brown's intentional decision to pay expenses other than Safe-Deposit's trust fund taxes cannot support a reasonable cause defense.

Ms. Brown also argues that her own health problems and the health of her children are sufficient to establish reasonable cause. However, Ms. Brown has not submitted any authority for this point, and the Court has been unable to find any. Moreover, the fact that Ms. Brown was able to pay employees' wages, other business expenses, as well as Safe-Deposit's trust fund taxes from 1996 through June 1999 (during which a majority of these health issues were present) militates against a finding

that these same health concerns should excuse Ms. Brown's later failures to pay Safe-Deposit's trust fund taxes.[4]

Based on the undisputed evidence submitted, the Court finds, as a matter of law, that Ms. Brown was the responsible person for the trust fund taxes for Safe-Deposit; that she willfully failed to pay those taxes for the tax periods ending June 30, 1999 through June 30, 2000, December 31, 2000, and March 31, 2001; and that Ms. Brown's failure to pay these trust fund taxes cannot be excused by reasonable cause.[5]

Summary judgment shall be granted in favor of the United States both as to Ms. Brown's tax refund claim and as to the United States' amended counterclaim.[6]

---

[4] The Court is also unpersuaded by Ms. Brown's unsupported contention that no one at the IRS ever warned her that she would be held personally liable for Safe-Deposit's trust fund taxes. Not only is it common sense that a company must pay its taxes, Ms. Brown herself acknowledges that she was responsible for paying those taxes, and that she received notices of assessment from the IRS. Whether or not she was aware that she could be directly penalized does not constitute reasonable cause for failing to comply with the Internal Revenue Code.

[5] Ms. Brown further contends that IRS Revenue Agent Richard Hanauer testified at his deposition that Ms. Brown had reasonable cause for her failure to pay the trust fund taxes. A review of the deposition excerpts submitted by Ms. Brown (Doc. 28) belies this claim. Agent Hanauer instead testified that if a corporate officer or employee's health prevented her from performing her duties, the company might have a basis for requesting an abatement of a deposit penalty for FICA taxes. That is not the same as stating that Ms. Brown's health issues would excuse her willful failure to pay trust fund taxes under § 6672.

[6] In her amended complaint and affidavit, Ms. Brown makes vague references to a lack of due process, abuse of process, mathematical errors, and illegal assessments, ostensibly because she did not receive IRS notices, and the IRS refused to agree to an offer in compromise. Ms. Brown has not submitted any evidence or legal authority to support this allegation. Moreover, Ms. Brown admits that she was at all times aware of Safe-Deposit's trust fund obligations, received notices of assessments, and failed to satisfy the company's tax obligations as required.

### **III.** **Requests for Additional Discovery**

In her supplemental response to the United States' motion for summary judgment, Ms. Brown asks to reopen discovery for a second time to allow her to conduct two additional depositions, and other unspecified discovery (Doc. 28). According to Ms. Brown, the United States did not provide full and complete answers to her prior discovery requests. In particular, she claims that the United States failed to disclose IRS Revenue Agent Richard Hanauer's supervisor, Richard Bartholomew, and the full address for retired IRS Appeals Officer Lee Copeland, who Ms. Brown claims was involved in her failed attempt to obtain an offer in compromise.

In response, the United States claims that it fully responded to Ms. Brown's requests for admissions, interrogatories, and requests for production, and provided Ms. Brown with the names and addresses of all IRS employees who were involved in the trust fund investigations. The United States further contends that Mr. Bartholomew and Mr. Copeland did not participate in the investigation into Safe-Deposit and Ms. Brown, and therefore have no information relevant to this case. Mr. Bartholomew was Agent Hanauer's supervisor and had no involvement in the trust fund investigations. Mr. Copeland's contact with Ms. Brown was limited to her failed offer in compromise, which did not take place until after the trust fund investigations were completed.

The Court agrees with the United States. The issues in this case are: (1) did Safe-Deposit fail to pay trust fund taxes for the tax periods in question; (2) was Ms.

Brown the responsible person for Safe-Deposit during those tax periods; and, if so, (3) was Ms. Brown's failure to pay the trust fund taxes willful.  The United States has presented undisputed evidence – including the testimony of Ms. Brown herself – establishing that the answer to each of these questions is "yes."  Ms. Brown has not explained how the testimony of either Mr. Bartholomew or Mr. Copeland would change this result.  Moreover, Ms. Brown fully participated in an eight (8) month discovery period,  received an additional forty-five (45) days to conduct further discovery, and was given the opportunity to file a supplemental summary judgment response.

While the Court is cognizant of Ms. Brown's *pro se* status, it is clear from her filings in this case that she is aware of the applicable law and rules of civil procedure, and the Court has given her more than enough time to complete discovery and litigate her claims.  Any additional discovery would merely be a fishing expedition which would only further delay the resolution of this case.

## **Conclusion**

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1) The United States' Dispositive Motion for Summary Judgment (Doc. 13) is GRANTED both as to the Plaintiff's Amended Complaint (Doc. 26), and the United States' Amended Counterclaim (Doc. 15).

(2) The Clerk is directed to enter judgment in favor of the United States and against Plaintiff Terri Lynn Brown as to all claims set forth in the Plaintiff's Amended

Complaint (Doc. 26). The Clerk is further directed to enter judgment in favor of the United States and against Plaintiff Terri Lynn Brown as to all claims set forth in the United States' Amended Counterclaim (Doc. 15) pursuant to 26 U.S.C. §§ 6671 and 6672 for the unpaid federal trust fund tax liabilities of Safe-Deposit, Inc., for the tax periods ending June 39, 1999 through June 30, 2000, December 31, 2000, and March 31, 2001, in the amount of $42,127.49, plus interest and statutory additions as allowed by law.

(3)   The Plaintiff's Request for Additional Discovery (Doc. 28) is DENIED.

(4)   The Clerk is directed to terminate any other pending motions, and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of February, 2010.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Terri Lynn Brown, *pro se*
             Maurya McSheehy